IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK BLACKWELL,<br><br>               Plaintiff,<br><br>v.<br><br>CHEX SYSTEMS, INC., et al.,<br><br>               Defendants. | CIVIL ACTION<br>NO. 19-3419 |

**OPINION**

**Slomsky, J.**                                                                                          **May 22, 2020**

**I.     INTRODUCTION**

Plaintiff Marc Blackwell ("Plaintiff") filed suit against Defendant Chex Systems, Inc. ("Defendant") and other Defendants[1] on July 30, 2019. In Count I of the Complaint, he alleges violations of the Fair Consumer Reporting Act ("FCRA") against all Defendants (Doc. No. 1 at 6-7). In Count II, he asserts a claim of defamation of character against Defendant Chex Systems, Inc. only. (Id. at 7-9.)

On September 25, 2019, Defendant Chex Systems, Inc. filed a Motion to Dismiss the Complaint. (Doc. No. 27.) On October 2, 2019, Plaintiff filed a Response to the Motion (Doc. No. 29), and on October 9, 2019, Defendant filed a Reply (Doc. No. 30). On December 20, 2019, the Court held a hearing on the Motion.

---

[1]  Plaintiff also named in his Complaint as Defendants other financial institutions, including Philadelphia Federal Credit Union, Citizens Bank, Santander Bank, N.A., and PNC Bank Corp. (See Doc. No. 1.) Citizens Bank has settled with Plaintiff (see Doc. No 40), and the other entities have filed answers to the Complaint.

1

The Motion to Dismiss is now ripe for disposition. For reasons set forth below, the Court will deny the Motion.

**II.    BACKGROUND**

Defendant Chex Systems, Inc. is a consumer reporting agency. It compiles credit information furnished by other entities and publishes the information in a consumer report for use by third parties. Here, the four other named Defendants supplied information to Defendant Chex Systems, Inc. for inclusion on Plaintiff's consumer report.

Plaintiff claims that the four financial institutions furnished inaccurate information to Defendant in the form of bank accounts in Plaintiff's name, which he asserts he never opened. (Doc. No. 1 ¶¶ 10-13.) On a consumer report, the accounts listed are known as trade lines. In May 2019, Plaintiff contacted Defendant regarding these bank accounts, or trade lines, appearing on his consumer report and disputed their accuracy. (Id. ¶ 15.) Plaintiff informed Defendant that the trade lines were inaccurate because he did not open the bank accounts and did not authorize anyone else to do so in his name. (Id. ¶ 14.) Defendant confirmed receipt of Plaintiff's dispute and Plaintiff believes and avers that Defendant notified the four other banking institutions of the inaccuracies. (Id. ¶¶ 17-18.) In any event, the responses of the four institutions to Defendant are not noted in the Complaint. Defendant Chex Systems Inc. informed Plaintiff that it would continue publishing the disputed data on his consumer report. (Id. ¶ 19.)

In June 2019, Plaintiff once again disputed the inaccurate data, informing Defendant that he did not open the accounts or authorize anyone else to do so in his name. (Id. ¶¶ 20-21.) In response, Defendant advised Plaintiff that it would continue to publish the data on his consumer report. (Id. ¶ 22.) Unhappy with this response, Plaintiff initiated this suit on July 30, 2019. (Id.)

In Count I of the Complaint, Plaintiff brings his claims under the FCRA pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o. These provisions of the FCRA provide a cause of action against "[a]ny person who willfully fails to comply" or who "is negligent in failing to comply" with the FCRA's requirements. 15 U.S.C. §§ 1681n(a), 1681o(a). Plaintiff alleges that Defendant failed to comply with these two provisions by (1) failing to employ and follow reasonable procedures to assure maximum possible accuracy of Plaintiff's consumer report in violation of 15 U.S.C. § 1681e(b), and (2) failing to delete the inaccurate information from Plaintiff's consumer file after reinvestigation in violation of 15 U.S.C. § 1681i(a).[2] (Id. ¶ 37.) Plaintiff also asserts that Defendant failed to communicate that the disputed debt was challenged in violation of 15 U.S.C. § 1681e(8)."[3] (Id. ¶ 37.)

In Count II, Plaintiff alleges defamation of character, claiming that Defendant knew or should have known that the information published on Plaintiff's consumer report was "incorrect and false as Plaintiff has notified them of such." (Id. ¶ 46.) Despite having been so notified, Plaintiff claims that Defendant "continued to publish and re-publish the inaccurate information" on his consumer report, which constitutes libel per se. (Id. ¶¶ 48-49.) Lastly, Plaintiff claims that Defendant acted with malice by failing to inform "all creditors, prospective creditors, furnishers of information and all other entities" of his disputes. (Id. ¶¶ 49-50.)

---

[2] The Complaint also states that Defendant failed to delete the inaccurate information, despite the fact that Defendant did not verify the accuracy of the information and was not provided with proof of its accuracy. (Id. ¶ 37.) Additionally, Defendant continued to furnish and distribute the inaccurate information, despite having knowledge of its inaccuracy "and/or [its] inability to be verified." (Id.) The Complaint, however, does not state which provision of the FCRA these two claims fall under. The Court assumes these two allegations fall under Plaintiff's claims pursuant to 15 U.S.C. § 1681(e)(b) and 15 U.S.C. § 1681i(a).

[3] Although Plaintiff has alleged a violation of 15 U.S.C. § 1681e(8) in Count I as his third claim, there is no such section in Title 15. For this reason, the Court need not discuss § 1681e(8) any further.

3

**III.    STANDARD OF REVIEW**

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).

The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-

pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

### IV.   ANALYSIS

The Motion to Dismiss submitted by Defendant Chex Systems, Inc. is premised on the failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). First, Defendant argues that Plaintiff's Fair Credit Reporting Act claims in Count I fail because they are not sufficiently alleged. (Doc. No. 27-1 at 1.) Second, Defendant contends that the FCRA preempts Plaintiff's common law defamation claim in Count II, and therefore it is precluded as a matter of law. (Id. at 13-15.)

Conversely, Plaintiff submits that the Motion should be denied because Plaintiff has stated a well-pled claim under the FCRA and because the FCRA does not preempt the defamation claim. (Doc. No. 29-2 at 9.) With respect to the defamation claim, Plaintiff argues that "the FCRA does not preempt Plaintiff's [d]efamation claim because Plaintiff has [pled] malice or willful intent to injure," which is an exception to FCRA preemption. (Id. at 11.)

For reasons discussed below, Defendant's Motion to Dismiss the Complaint will be denied. The Court will first address the FCRA claims and will then address the defamation of character claim.

### A. Count I: Plaintiff's FCRA Claims

The Fair Credit Reporting Act was created to "protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." Cortez v. Trans Union, LLC, 617 F.3d 688, 706 (3d Cir. 2010) (quoting Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995)). To accomplish this goal, the FCRA mandates that consumer reporting agencies "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). A consumer may pursue a private right of action against a reporting agency if the consumer believes the reporting agency negligently or willfully violated their duties under the FCRA. See Philbin v. Trans Union Corp., 101 F.3d 957, 962 (3d Cir. 1996); 15 U.S.C. §§ 1681n, 1681o.

#### 1. 15 U.S.C. § 1681e(b)

In Count I of the Complaint, Plaintiff claims that Defendant negligently and willfully violated 15 U.S.C. § 1681e(b) of the FCRA. § 1681e(b) of the FCRA "governs the behavior of credit reporting agencies when preparing credit reports generally." Shannon v. Equifax Info. Serv., LLC, 764 F. Supp. 2d 714, 720 (E.D. Pa. 2011). The section reads:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

§ 1681e(b).

To prove negligent noncompliance with § 1681e(b), a plaintiff must show that "(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." Schweitzer v. Equifax Info. Sols. LLC, 441 F. App'x 896, 902 (3d Cir. 2011) (quoting Philbin, 101 F.3d at 963).

Here, Plaintiff has sufficiently pled negligent noncompliance with § 1681e(b). He has met the first element because he alleges that Defendant included inaccurate information on his credit report. (Doc. No. 1 ¶ 14.) He met the second element because he avers that Defendant continued to publish inaccurate information on his credit report following his complaints in May 2019, and again in June 2019. (Id. ¶¶ 15-21.) Regarding the third and fourth elements, Plaintiff has pled that he suffered injury due to the inclusion of inaccurate information in his credit report. Plaintiff claims that he was denied checking accounts and other banking products, has suffered injury to his credit rating, and has suffered financial harm. (Id. ¶¶ 27-29.) Therefore, Plaintiff has sufficiently alleged a negligence noncompliance claim.

Further, to prove willful noncompliance with § 1681e(b), a plaintiff must show that defendant "knowingly and intentionally committed an act in conscious disregard for the rights of others, but need not show malice or evil motive." Philbin, 101 F.3d at 970. "A company cannot be said to have willfully violated FCRA if the company acted on a reasonable interpretation of FCRA's coverage." Dennis v. Trans Union, LLC, No. CIV.A. 14-2865, 2014 WL 5325231, at *8 (E.D. Pa. Oct. 20, 2014). An actor's "objectively unreasonable" actions regarding a consumer's

credit account can support a finding of willfulness, and the United States Supreme Court has also clarified that reckless disregard of FCRA requirements also qualifies as a willful violation.  Id.

In this case, Plaintiff has sufficiently pled willful noncompliance with § 1681e(b).  Plaintiff has alleged that Defendant knowingly disregarded his rights and violated the FCRA by reporting inaccurate information on Plaintiff's credit report both in May 2019 and June 2019.  (Id. ¶¶ 15-21.)  Moreover, Plaintiff need not "prove that Defendant's purported interpretation [of the FCRA] was objectively unreasonable at the Motion to Dismiss stage."  Dennis, 2014 WL 5325231, at *9 (stating, "Plaintiff is not obligated at the Motion to Dismiss phase to prove that Defendant's [alleged FCRA violation] was based on a reading of the FCRA that was either knowingly erroneous or was objectively unreasonable and therefore reckless.").  At this juncture, Plaintiff has sufficiently pled facts that show the plausibility of a willful violation.

Furthermore, the district court's analysis in Dougherty v. Quicksius, LLC supports Plaintiff's argument that the Motion to Dismiss the 1681(e)(b) claim should be denied.  See Dougherty v. Quicksius, LLC, No. CV 15-6432, 2016 WL 3757056 (E.D. Pa. July 14, 2016).  In Dougherty, the district court denied a motion to dismiss negligent and willful noncompliance claims under § 1681e(b).  Id. at *7.  There, the plaintiff alleged in her complaint that the defendant consumer reporting agency incorrectly categorized summary criminal offenses in the plaintiff's criminal background report and listed single offenses more than once.  Id. at *2.  When the plaintiff disputed the accuracy of the information, the defendant revised some offenses on the report, but did not correct all of the inaccuracies.  Id.  As a result, the plaintiff was not hired by a prospective employer who requested her criminal background report from defendant.  Id.

Because the plaintiff "alleged an inaccuracy in the report due to duplicative reporting of her criminal history," the Dougherty court denied the defendant's motion to dismiss.  Id. at *6.

The court explained that "[a]t the motion to dismiss stage, an allegation of inaccurate reporting may support an inference that reasonable procedures were not followed, thereby permitting discovery." Id. at *5 (quoting Smith v. HireRight Sols., Inc., 711 F. Supp. 2d 426, 435 (E.D. Pa. 2010)). Moreover, "[w]hether reasonable procedures were followed is 'normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question.'" Id. (quoting Shannon, 764 F. Supp. 2d at 723). As a result, the district court held that "Plaintiff has met her burden at this stage because she has pled that report[ing] the same criminal information multiple times on a report, create[s] a report that inaccurately exaggerates the consumer's criminal history." Id. at 6 (internal quotations omitted). A similar holding applies here because Plaintiff has pled allegations of inaccurate reporting on multiple occasions in his consumer report.

Defendant does not concede the Section 1681(e)(b) claim has been sufficiently alleged, contending that Plaintiff did not provide facts regarding "[Defendant's] procedures in compiling consumer reports, much less how any such procedures are unreasonable." (Doc. No. 27-1 at 6.) But Plaintiff's failure to articulate particular procedures or policies that Defendant internally maintains is not fatal to Plaintiff's claim because "such matters are particularly within the knowledge of Defendant and Plaintiff is not expected to plead such matters with specificity absent the benefit of discovery," Dougherty, 2016 WL 3757056, at *5 (quoting Smith, 711 F. Supp. 2d at 435). Moreover, while "bare allegations would not necessarily withstand summary judgment scrutiny . . . a plaintiff, having set forth a legally and factually viable cause of action is entitled to the benefits of discovery before being put to his or her proofs." Id. (quoting Smith, 711 F. Supp. 2d at 438).

Thus, viewing the facts in the light most favorable to Plaintiff, he has plausibly alleged a § 1681e(b) violation by pleading that Defendant published a consumer report on him that contained

inaccurate information even after checking into its accuracy. Accordingly, Plaintiff has stated a plausible claim under § 1681e(b), and Defendant's Motion to Dismiss this claim will be denied.

### 2. 15 U.S.C. § 1681i(a)

Plaintiff also avers that Defendant negligently and willfully violated 15 U.S.C. § 1681i(a) of the FCRA in Count I of the Complaint. § 1681i(a) of the FCRA "governs the behavior of credit reporting agencies when reinvestigating consumer credit history upon receiving notice of disputed information." Shannon, 764 F. Supp. 2d at 720. The section reads:

> Subject to subsection (f) and except as provided in subsection (g), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

§ 1681i(a)(1)(A).

After a consumer reporting agency conducts its reinvestigation, it must either record the current status of the disputed information or delete the disputed information in accordance with subsection (a)(5)(A), which reads:

> If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall—
>
> > (i)   promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and

>> (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer.

§ 1681i(a)(5)(A).

Simply put, credit reporting agencies must promptly conduct a reasonable reinvestigation of information in a consumer credit report when a consumer disputes the validity of that information. Schweitzer v. Equifax Info. Sols. LLC, 441 F. App'x 896, 903 (3d Cir. 2011). "A consumer reporting agency is liable for failing to reinvestigate if it had a duty to do so and . . . would have discovered a discrepancy had it undertaken a reasonable investigation." LeBoon v. Equifax Info. Servs., LLC, No. CV 18-1978, 2020 WL 610450, at *5 (E.D. Pa. Feb. 7, 2020) (citing Cortez, 617 F.3d at 713).

However, the question regarding § 1681i(a) is not only whether the credit reporting agency reinvestigated, but whether the reinvestigation was "reasonable." Schweitzer, 441 F. App'x 896 at 904. While the parameters of a reasonable investigation often depends on the circumstances of a particular dispute, "it is clear that a reasonable investigation must mean more than simply including public documents in a consumer report or making only a cursory investigation into the reliability of information that is reported to potential creditors." Id. (internal quotations omitted.) Therefore, to fulfill its obligation under § 1681i(a), a credit reporting agency may be required, in certain circumstances, to verify the accuracy of its initial source of information. Id. "Whether the credit reporting agency must go beyond the original source depends on a number of factors, including: (1) whether the consumer has alerted the consumer reporting agency that the original source may be unreliable; (2) whether the consumer reporting agency itself knows or should know that the original source is unreliable; and (3) the comparative costs of verifying the accuracy of the original sources versus the potential harm the inaccurate information may cause the consumer."

Dixon-Rollins v. Experian Info. Sols., Inc., 753 F. Supp. 2d 452, 458 (E.D. Pa. 2010) (citing Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997)). "The grave responsibility imposed under § 1681i(a) must consist of something more than merely parroting information received from other sources." Schweitzer, 441 F. App'x 896 at 904.

Ultimately, if a credit reporting agency determines that the disputed information is inaccurate, incomplete, or cannot be verified, it must delete or modify the information. § 1681i(a)(5)(A). It must also promptly notify the furnisher of that information that the information has been modified or deleted from the consumer's file. Id.[4]

Here, based on the allegations in the Complaint viewed in light most favorable to Plaintiff, Plaintiff has sufficiently averred that Defendant failed to fulfill its obligation under § 1681i(a). Plaintiff alleges that he disputed the accuracy of information that appeared on his consumer credit report with Defendant in May 2019, and again in June 2019. (Doc. No. 1 ¶¶ 15-21.) Following these disputes, Defendant expressed its intent to continue publishing the inaccurate information and disseminating the information to third parties. (Id. ¶ 22.) Defendant did not contact Plaintiff to follow up on, verify, or elicit more specific information regarding the disputes, and also did not contact third parties that would have relevant information concerning the disputes. (Id. ¶ 23.) Plaintiff alleges that despite his efforts, Defendant repeatedly failed to perform a reasonable reinvestigation of his complaints and did not remove the inaccurate information from his report. (Id.)

Viewing these allegations in the light most favorable to Plaintiff, they demonstrate that Defendant failed to fulfill its obligation under § 1681i(a). Once Plaintiff disputed the validity of

---

[4] The consumer reporting agency must notify the furnisher of the disputed information regardless of whether the disputed information is found to be accurate, inaccurate, incomplete, or unverifiable. See § 1681i(a)(2).

12

information on his credit report in May 2019, Defendant had a duty to promptly conduct a reasonable reinvestigation of the accuracy of that information. The Complaint states that Defendant notified the furnishers of the information after Plaintiff's first communication (Doc. No. 1 ¶ 18), but neither Plaintiff nor Defendant offers the furnishers' responses, i.e. whether the disputed information was accurate or inaccurate.

Further, parroting information it received from the furnishers is not enough to fulfill Defendant's obligation. Plaintiff alerted Defendant that the source of the information from the furnishers may be unreliable. This notification gave Defendant knowledge of the unreliability, and triggered Defendant's responsibility to investigate beyond the furnishers' information. Defendant makes no argument regarding the costs it have would incurred to verify the accuracy of the original sources, raising the inference that the potential harm the inaccurate information would cause Plaintiff would outweigh the cost Defendant would have incurred in its investigation.

In the Motion to Dismiss, Defendant argues that Plaintiff's § 1681i claim should be dismissed because (1) Defendant did not have a duty to contact Plaintiff for more information, and (2) Plaintiff alleges that Defendant contacted parties, namely the furnishers of information on each account, with relevant information. (Doc. No. 27-1 at 13.) Despite Defendant's argument that Plaintiff's claim fails because of the notification to the furnishers, which is required by statute, this is not conclusive evidence of a reasonable reinvestigation, nor is it sufficient under the facts alleged in the Complaint for Defendant to fulfill its obligation under § 1681i(a). Notably, Defendant did not provide the furnishers' responses to its notification, and therefore it is unknown whether the furnishers informed Defendant that the information was accurate or inaccurate. Thus, accepting the allegations in the Complaint as true, under the facts alleged there, Defendant had an obligation

13

to verify the accuracy of the source of information. Plaintiff's § 1681i claim will not be dismissed at this stage of the proceedings.[5]

### B. Count II: Defamation of Character Claim

In Count II, Plaintiff alleges defamation of character against Defendant, claiming that Defendant knew or should have known that the information published on his consumer report was "incorrect and false as Plaintiff has notified them of such." (Doc. No. 1 ¶ 46.) Despite having been notified, Plaintiff claims that Defendant "continued to publish and re-publish the inaccurate information" on Plaintiff's consumer report, constituting libel per se. (Id. ¶¶ 48-49.)

Conversely, in its Motion to Dismiss, Defendant argues that two FCRA provisions preempt Plaintiff's state law defamation claim: 15 U.S.C. § 1681t(b)(1)(B) or 15 U.S.C. § 1681h(e). (Doc. No. 27-1 at 13.) Defendant does not challenge the sufficiency of the allegations of the Complaint to make out the claim of defamation; it only argues that the claim is preempted by the FCRA.

First, Defendant contends that 15 U.S.C. § 1681t(b)(1)(B) preempts Plaintiff's claim for defamation of character. (Doc. No. 30 at 9.) This subsection states,

> No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681i of this title, relating to the time by which a consumer reporting agency must take any action, including the provision of notification to a consumer or another person, in any procedure related to the disputed accuracy of information in a consumer's file, except that this subparagraph shall not apply to any State law in effect on September 30, 1996[.]

15 U.S.C. § 1681t(b)(1)(B).

---

[5] Defendant also argues that Plaintiff's claim more closely resembles one under § 1681c-2 for "failure to block reporting of an account based on identity theft," which Plaintiff did not raise in his Complaint. (Doc. No. 27-1 at 10.) There is no requirement that Plaintiff bring such a claim, even if Defendant believes it may be more appropriate. Thus, there is no need for the Court to engage in an analysis of the identity theft section, § 1681c-2.

"Thus, the FCRA preempts state consumer reporting statutes when: (1) the subject matter of the state statute concerns matters regulated under § 1681i; and (2) the state law took effect after September 30, 1996." Maiteki v. Knight Transportation Inc., No. 12-CV-2021-WJM-CBS, 2015 WL 328250, at *5 (D. Colo. Jan. 23, 2015) (citing 15 U.S.C. § 1681t(b)(1)(B)).

Because a common law defamation of character claim is not created by state statute, it does not have an effective date and for this reason is not preempted by § 1681t(b)(1)(B). In this regard, while decisions within the Third Circuit regarding § 1681t(b)(1)(B) are limited, district courts have determined that common law claims, as opposed to statutory claims, are not preempted under § 1681t(b)(1)(B). See Cosmas v. Am. Exp. Centurion Bank, 757 F. Supp. 2d 489, 501 (D.N.J. 2010) (noting the Middle District of Pennsylvania case Sites v. Nationstar Mortg. LLC, 646 F. Supp. 2d 699, 709 (M.D. Pa. 2009) concluded that 1681t(b)(1)(B) provides that it shall not apply to any State law in effect on September 30, 1996" and "cannot be read to apply to common law claims because common law claims do not have effective dates"); Manno v. Am. Gen. Fin. Co., 439 F. Supp. 2d 418, 425 (E.D. Pa. 2006) (recognizing plain language of § 1681t(b)(1)(B) indicates that it was intended to preempt only state regulations enacted after the passage of 1681(t)). Therefore, as the plain language of § 1681t(b)(1)(B) states that it "shall not apply to any state law in effect on September 30, 1996," it cannot be read to apply to common law claims because common law claims do not have effective dates. As a result, Plaintiff's defamation claim is not preempted by § 1681t(b)(1)(B).

The second statute that Defendant relies upon regarding preemption is 15 U.S.C. § 1681h(e), which provides as follows:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any

15

> user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).

To prove malice, a plaintiff must show that the defendant's alleged defamatory statement "was false or [the defendant] acted with reckless disregard of its truth or falsity." O'Connor v. Trans Union Corp., No. CIV. A. 97-4633, 1999 WL 773504, at *8 (E.D. Pa. Sept. 29, 1999); see also DiPrinzio v. MBNA Am. Bank, N.A., No. 04-872, 2005 WL 2039175, at *5 (E.D. Pa. Aug. 24, 2005). To prove willfulness, a plaintiff must show that defendant "knowingly and intentionally committed an act in conscious disregard for the rights of others." DiPrinzio, 2005 WL 2039175, at *4 (quoting Cushman, 115 F.3d at 226).

Here, Plaintiff's defamation claim will survive Defendant's Motion to Dismiss because Plaintiff has sufficiently alleged willfulness and malice to evade preemption under § 1681h(e). The Complaint states that despite the fact that Plaintiff disputed the inaccuracies on his credit report with Defendant, Defendant continued to publish the inaccuracies knowing that the information was false. (Doc. No. 1 at ¶¶ 46-49.) Plaintiff also stated that Defendant acted with malice when it failed to communicate the inaccuracies to all entities that receive Plaintiff's consumer information from Defendant. (Id. ¶ 50.) These assertions successfully plead malice or willful intent to injure to warrant denial of the motion to dismiss Count II.

Defendant's contentions that there is no factual basis to demonstrate that it acted with malice toward Plaintiff, and more specifically that Defendant did not act with malice because it gave the banks which furnished the information notice of the dispute, are unavailing. Plaintiff has

alleged that Defendant continued to publish inaccurate information on his consumer report and disseminate that information to third parties, despite knowing that information was incorrect. As such, Plaintiff has alleged such willfulness and malice, and his defamation claim will not be dismissed at this stage of the proceeding. Therefore, the Court will deny Defendant's Motion to Dismiss Count II of the Complaint.

## V.     CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss will be denied. An appropriate Order follows.